IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01905-NRN

STEVE WAGNER,

Plaintiff,

v.

J.D. CLEANING SERVICE, LLC,
JOSEPH DE PINA, SR., in his Individual Capacity,

Defendants.

---

### ORDER ON
### DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Dkt. #31)
### and
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. #42)

---

**N. Reid Neureiter**
**United States Magistrate Judge**

This matter is before the Court for all purposes upon the consent of the parties (Dkt. #15) and an Order Referring Case entered by Chief Judge Philip A. Brimmer on November 11, 2022. (Dkt. #16.) Now pending before the Court are two motions.

- Defendants J.D. Cleaning Service, LLC ("J.D. Cleaning") and Joseph De Pina Sr.'s ("Mr. De Pina") (together, "Defendants") Second Motion for Summary Judgment. (Dkt. #31.) Plaintiff Steve Wagner ("Mr. Wagner" or "Plaintiff") filed a response. (Dkt. #35.) Defendants filed a reply. (Dkt. #36.) The Court heard oral argument on July 25, 2023. (*See* Dkt. #41.)

- Mr. Wagner's Motion for Summary Judgment (Dkt. #42), to which Defendants responded (Dkt. #45) and Plaintiff replied (Dkt. #46).

The Court has taken judicial notice of the Court's file and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is hereby **ORDERED** that the Defendants' Second Motion for Summary Judgment (Dkt. #31) is **GRANTED** and Plaintiff's Motion for Summary Judgment (Dkt.#42) is **DENIED** as moot.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits show that there is no genuine dispute as to any material fact, and the moving party is entitled to judgement as a matter of law. Fed. R. Civ. P. 56. A fact is material when it has the power to affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A judge's function in evaluating a motion for summary judgement is not to weigh the evidence and determine the truth of the matter, but rather to determine if there is a genuine issue to be heard at trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

The moving party carries the initial burden of demonstrating the factual basis for the claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). While a judge is only

2

required to consider the cited materials, they may consider additional materials from the record. Fed. R. Civ. P. 56(c)(3).

If the moving party successfully supports a motion for summary judgment, the burden shifts to the nonmoving party who "may not rest on mere allegations or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Neither unsupported nor conclusory allegations may establish an issue of fact sufficient to defeat summary judgment. *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005); *see also McVay v. Western Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987).

## BACKGROUND[1]

This suit arises out of Mr. Wagner's claim that Defendants, his former employers, violated the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.*, by failing to pay him all wages to which he is entitled. Mr. Wagner filed this lawsuit on August 1, 2022 (Dkt. #1) and amended his complaint on September 9, 2022 (Dkt. #12). The Amended Complaint specifically alleges that Defendants violated the FLSA by failing to properly pay Mr. Wagner overtime, failing to pay him proper minimum wage, failing to keep proper business records, and engaging in the preceding practices willfully.

Defendants first moved for summary judgment on January 25, 2021. (Dkt. #21.) The Court denied that motion without prejudice following a hearing on April 25, 2023. (Dkt. #30.) Defendants filed a Second Motion for Summary Judgment on June 7, 2023.

---

[1] All citations to docketed materials are to the page number in the CM/ECF header which may differ from a document's internal pagination.

(Dkt. #31.) In this motion, Defendants argue that the Court does not have subject matter jurisdiction[2] over this lawsuit because Defendants are not "employers" covered by the FLSA, so there is no enterprise coverage, nor was Mr. Wagner, individually, engaged in interstate commerce, which precludes individual coverage.

On August 15, 2023, Mr. Wagner filed his Motion for Summary Judgment. (Dkt. #42.) Defendants filed a response (Dkt. #45) that essentially repeats the arguments contained in their summary judgment motion; namely, that Mr. Wagner has not satisfied the requirement of showing either enterprise or liability coverage.

The Court will first address the FLSA eligibility issues raised in Defendants' motion, as they are dispositive and require dismissal of Mr. Wagner's Amended Complaint.

## FLSA ELIGIBILITY

To prevail on his FLSA claims, Mr. Wagner must show that he is entitled to coverage. Eligibility for FLSA coverage can be attained on either an enterprise basis or an individual basis. *See* 29 U.S.C. § 203; *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 n.8 (1985) ("Employment may be covered under the [FLSA] pursuant

---

[2] It appears that the Tenth Circuit has not addressed whether the employment relationship under the FLSA is a jurisdictional question, as Defendants argue, or merely an element to an FLSA claim, and courts in this District have decided the question both ways. *See Murphy v. Allstaff Med. Res., Inc.*, No. 16-cv-02370–WJM, 2017 WL 2224530, at *3 (D. Colo. May 22, 2017) ("The Court agrees with the proposition that existence of an employment relationship between or among the parties is a jurisdictional requirement under the FLSA.") (citing *Li v. Renewable Energy Solutions, Inc.*, No. 11–3589 (FLW), 2012 WL 589567, at *4–5 (D. N.J. Feb. 22, 2012)); *Fuentes v. Compadres, Inc.*, No. 17-cv-01180-CMA-MEH, 2018 WL 1444209, at *3 (D. Colo. Mar. 23, 2018) ("[T]he Court concludes that the existence of an employee/employer relationship under the FLSA is an element of the plaintiff's meritorious FLSA claim and does not implicate this Court's threshold subject matter jurisdiction."). Because this motion is brought under Rule 56, rather than Rule 12, the Court does not need to decide this question.

to either 'individual' or 'enterprise' coverage."). When a company has "employees engaged in commerce or the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," *and* the company's "annual gross volume of sales made or business done is not less than $500,000," it is considered an "enterprise" and its employees are entitled to protection from the FLSA. *Id.* §§ 203(s)(1)(A)(i–ii). Employees may also be eligible for individual FLSA coverage if they themselves are "engaged in commerce or the production of goods for commerce." 25 C.F.R. § 776.0a (2022).

Defendant J.D. Cleaning is a Colorado limited liability company and Mr. De Pina is its owner. Dkt. #31 at 2, ¶¶ 1, 3. Mr. De Pina submitted an affidavit (Dkt. #31-3) in which he swore under oath that J.D. Cleaning does not have annual gross revenues in excess of $500,000.00 and is not engaged in interstate commerce and/or the production of goods for commerce.

Mr. Wagner supplied his own declaration (Dkt. #35-1), in which he claims that during the period he worked at J.D. Cleaning as a cleaning technician (August 1, 2020 until December 26, 2021), he cleaned businesses throughout the Front Range and once in Laramie, Wyoming, including for businesses that were engaged in interstate commerce, and that he "knew that the company made about $1,500 per day when we cleaned carpets, and we cleaned carpets most days in the summer."

The parties dispute many other facts, such as the hours Mr. Wagner was required to work and whether he was permitted to take breaks. However, the Court finds that there are no genuine issues of material fact that Mr. Wagner was not entitled to

5

FLSA coverage while employed at J.D. Cleaning. Therefore, summary judgment in Defendants' favor is warranted.

**Enterprise Coverage Under the FLSA**

"For enterprise coverage, there must be an '[e]nterprise engaged in commerce or in the production of goods for commerce.'" *Reagor v. Okmulgee Cnty. Fam. Res. Ctr.*, 501 F. App'x 805, 809 (10th Cir. 2012) (quoting 29 U.S.C. § 203(s)(1)). "[E]ngaged in commerce" means the enterprise has "(1) two or more employees who are directly engaged in commerce or handling goods or materials that have been moved in commerce *and* (2) an annual gross volume of sales over $500,000." *Harlas v. Barn, LLC*, 853 F. App'x 292, 294 (10th Cir. 2021) (emphasis in original) (citing 29 U.S.C. §§ 203(s)(1)(A)(i), (ii)).

Defendants argue that it is undisputed that J.D. Cleaning did not have annual sales of more than $500,000.00. In support, they cite Mr. De Pina's affidavit and tax returns for the years 2016–2021. J.D. Cleaning's best year during that period, 2021, only shows $210,571 in gross revenue, less than half of what is required to be considered an "enterprise" under the FLSA. (*See* Dkt. #31-1.)

In response, Mr. Wagner argues that Mr. De Pina's affidavit should be stricken because it is not based on personal knowledge and is "simply [a] recitation[ ] of legal conclusion[s] without any factual support whatsoever." (Dkt. #35 at 11.) With regards to J.D. Cleaning's revenue, this is extremely unpersuasive. Mr. De Pina is the owner of J.D. Cleaning. He has personal knowledge of its finances and business practices. His declaration, moreover, is consistent with the tax returns provided. And Mr. Wagner concedes that J.D. Cleaning's tax returns indicate that the company's annual revenues

6

did not exceed $500,000 from 2016 through 2021. (*See* Dkt. #35 at 5–6.) Nevertheless, he argues that it has not been established whether J.D. Cleaning's *current* revenue exceeds $500,000. But Mr. Wagner does not *currently* work for J.D. Cleaning, and has not since December 2021, making this irrelevant. Mr. Wagner also claims that "in his experience there is a likelihood that the company's revenue has indeed exceeded $500,000.00." (*Id.* at 5.) He cites his own claim in his affidavit that "I knew that the company made about $1,500 per day when we cleaned carpets, and we cleaned carpets most days in the summer." (Dkt. #35-1 at 3, ¶ 21.) This statement alone is plainly insufficient to bring Defendants' annual income into genuine dispute. Mr. Wagner simply provides his personal belief as to Defendants' income during the summer months, which does not rebut the evidence presented by Defendants, as earning $1,500 "most days during the summer" does come close to establishing that J.D. Cleaning gross annual revenues exceeded $500,000 during any of the relevant years. He provides no details about how many days of the year J.D. Cleaning operates, how its work varies throughout the year, or the rates that Defendant charges for any other services.

Defendants have met their burden of showing that there is no genuine issue of material fact that J.D. Cleaning's annual income did not exceed $500,000 during the period of Plaintiff's employment. Accordingly, Mr. Wagner has failed to establish enterprise coverage.

**Individual Coverage**

Mr. Wagner also contends that he has sufficiently established FLSA coverage on an individual basis. The Court disagrees.

7

For individual coverage to apply under FLSA, Mr. Wagner must provide evidence that he was "(1) engaged in commerce or (2) engaged in the production of goods for commerce." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 U.S.C. § 207(a)(1)).

The Court first concludes that Mr. Wagner was not "engaged in commerce" within the meaning of the FLSA. Congress intended to "regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Reagor*, 501 F. App'x at 809 (citing *Thorne,* 448 F.3d at 1266). To be "engaged in commerce," the employee

> must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.,* transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.,* regular and recurrent use of interstate telephone, telegraph, mails, or travel.

*Thorne*, 448 F.3d at 1264. Thus, "an employee must actually be engaged in the movement of commerce, or the services he performs must be so closely related thereto as to be for all practical purposes an essential part thereof." *N.M. Pub. Serv. Co. v. Engel*, 145 F.2d 636, 638 (10th Cir. 1944) (citing *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943)). Involvement in interstate commerce is dependent on the employee's actions themselves, not the business of their employer. *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959).

Here, Mr. Wagner alleges in his Amended Complaint as follows:

> Defendant JD Cleaning Service purchases cleaning supplies, equipment, and other necessary items to run its cleaning services company and serve its customers from out of state vendors selling such supplies, and equipment originating outside the state of Colorado. Agents of Defendant JD Cleaning Service also travel on public highways and interstates to various customer locations to perform their work. In addition, the company performed work for entities heavily involved in the stream of commerce such as Amazon. Further, Defendant JD Cleaning Service advertises its cleaning

>services company to the entire world on the internet at https://www.facebook.com/jdcleanllc. Defendant JD Cleaning Service also accepts payments by credit cards and, upon information and belief, utilizes the phone and internet lines to accept and transmit payments.

(Dkt. #12 at 3–4, ¶ 11.)

None of these facts make a legal difference. J.D. Cleaning may purchase its supplies from out-of-state vendors, but the FLSA "does not include goods after their delivery into the actual physical possession of the ultimate consumer." *Reagor*, 501 F. App'x at 810 (citing 29 U.S.C. § 203(i)). And Mr. Wagner may have travelled on public highways, but he alleged to have used those highways only once to leave the state of Colorado for work, and "[i]solated or sporadic activities do not satisfy this requirement." *Id.* at 809. J.D. Cleaning concedes it advertises on the internet, but Mr. Wagner does not allege that he himself was ever involved in these activities, and logic dictates that such advertising, by itself, is insufficient to fall within the FLSA's ambit. Moreover, while J.D. Cleaning may accept credit cards and transmit payments over the telephone, Mr. Wagner does not claim that he regularly made interstate phone calls or processed interstate payments. The Court finds that Mr. Wagner cannot show that his interactions with interstate commerce were sufficiently regular and recurrent such that he can be said have "engaged in commerce" within the meaning of the FLSA.

Mr. Wagner stresses in his briefing that J.D. Cleaning's *clients* were engaged in interstate commerce. He claims that during his employment he cleaned, among other places, a used car dealership, the headquarters of Ball Aerospace, a headquarters for a trash company, an Amazon warehouse, and a Laramie, Wyoming airport. (*See* Dkt. #35-1.) He argues that his work at these companies regularly placed him within the stream of interstate commerce necessary for the functioning of those businesses. (*Id.*)

Plaintiff concedes that he was not directly involved in the interstate activity of the aforementioned companies; however, he believes that his work in keeping them clean and habitable is sufficiently essential to constitute engagement with interstate commerce rather than local activity. (Dkt. #35 at 22.)

But "[e]mployees are not engaged in commerce when they provide general services through a contract at facilities where interstate commerce activities occur." *Steimel v. Conway Prowash, LLC*, No. 1:15-cv-599, 2016 WL 7616509, at *3 (W.D. Mich. May 31, 2016); *see also McLeod,* 319 U.S. 491, 497 (rejecting FLSA coverage for a contractor who prepared and served meals to employees of a railroad company who were maintaining interstate railways); *Wirtz v. B.B. Saxon Co.,* 365 F.2d 457, 462 (5th Cir. 1966) (holding that providing janitorial services even in a building that houses an instrumentality of commerce, like a bank, is not engaging in commerce for individual coverage under the FLSA)*; Blumenthal v. Girard Trust Co.,* 141 F.2d 849, 851 (3d Cir. 1944) ("This plaintiff's work in cleaning and taking care of the particular tenant's quarters . . . cannot be considered a step in the tenant's mail order business."). An employee's connection to interstate commerce hinges upon the essentiality and indispensability of their work to the movement of commerce. *Overstreet v. North Shore Corp.*, 318 U.S. 125, 129 (1943). As a cleaning technician, Mr. Wagner was not directly involved in the movement of commerce nor was his work directly related to an instrumentality of interstate commerce.

Mr. Wagner also analogizes his responsibilities to those by the plaintiff in *Dimingo v. Midnight Xpress, Inc.* 325 F.Supp.3d 1299 (S.D. Fl. 2018). In that case, the plaintiff provided security services at the parking yard of the defendant trucking

10

companies. The court found that the plaintiff's security services related to the instrumentalities of interstate commerce and contributed materially to the defendants' interstate business. 325 F. Supp. 3d at 1310. This case is distinguishable, however. Mr. Wagner was an employee of J.D. Cleaning which, unlike interstate trucking companies, is not an instrumentality of interstate commerce and did not have a regular interstate business.

Neither was Mr. Wagner engaged in the production of goods for commerce. Mr. Wagner claims that his work was essential to J.D. Cleaning's clients and therefore so closely related to commerce that it affected it. Mr. Wagner draws comparison to *Kirschbaum v. Walling,* where a landlord's employees were eligible for individual FLSA coverage for providing essential maintenance services to tenants who were engaged in the production of goods for commerce. 316 U.S. 517, 526 (1942). Mr. Wagner asserts that his work at companies like Ball Aerospace and Amazon is like the work done by the maintenance workers in *Kirschbaum*. However, unlike the employees in *Kirschbaum*, Mr. Wagner has not provided evidence that his activities are integral to the production of goods. *See Rosenberg v. Semeria*, 137 F.2d 742, 743–44 (9th Cir. 1943) (holding that performing contracted janitorial and maintenance services for companies does not sufficiently engage a contracted employee in commerce for purposes of the FLSA, even if the company's activity is interstate in nature). Like the employees in *Rosenberg*, Mr. Wagner provides janitorial services to companies whose activity may be considered interstate in nature. But the provision of janitorial services, though potentially having an effect or indirect relation to interstate activities, is not "actually in or so closely related to the movement of commerce to be a part of it." *Rosenberg*, 137 F.2d at 744 (citing

*McLeod*, 319 U.S. at 496). While Mr. Wagner's services may have contributed to the comfort and convenience of J.D. Cleaning's customers like Amazon and Ball Aerospace, Mr. Wagner did not perform any functions of interstate commerce, such as maintaining equipment or manufacturing goods. Applying individual coverage to Mr. Wagner's activities "which only remotely affect the commerce in which the tenants and owners of the building are engaged, would stretch the [FLSA] beyond its intended scope." *Convey v. Omaha Nat. Bank*, 140 F.2d 640, 642 (8th Cir. 1943).

In reaching this conclusion, the Court is guided by the reasoning in *Steimel v. Conway Prowash, LLC*. Like Mr. Wagner, the plaintiff in that case was employed as a cleaning technician and provided cleaning services for his employer's clients, which included businesses involved in interstate commerce. 2016 WL 7616509, at *3. After rejecting the plaintiff's argument that he was "engaged in commerce," the court turned to whether he was "engaged in the production of goods for commerce" when he performed cleaning services at companies which produced or shipped goods in interstate commerce. *Id.* The court discussed how the status of maintenance workers working in buildings where goods in interstate commerce are produced has evolved since *Kirshbaum*, noting that a 1949 amendment to the FLSA no longer provided coverage to those employees whose work was not directly essential to the production of goods. *Id.* at *4. The Court concluded:

> Steimel has not established that he is engaged in the production of goods for the purposes of the FLSA. The older cases he cites early in his brief for the proposition that janitors and maintenance workers are covered by the FLSA are opinions issued prior to the 1949 amendments. The evidence Steimel has included as part of the record establishes, at best, that he performed some employment-related activity at commercial establishments which were likely engaged in the production of goods moved in interstate commerce. But the record contains scant evidence describing the activities

12

> that Steimel performed when sent to each location by his employer, Conway Prowash. Individual coverage under the FLSA, as opposed to enterprise coverage, requires careful examination of the employee's own activities, not the activities of the business. [*Martinez v. Petrenko*, 792 F.3d 173, 175 (1st Cir. 2015)]. Nor does the record contain any evidence from which this Court might conclude that Steimel's activities were essential to the businesses where he was sent. In contrast, in *Dooley Brothers*, there were affidavits submitted by the customers of the independent contractor. [*Mitchell v. Dooley Bros., Inc.*, 286 F.2d 40, 42 (1st Cir. 1960)]. The customers attested that the employees of Dooley Brothers collected the refuse anywhere from daily to three times a week. *Id.* The customers further attested that such regular collection was essential to their business because of their lack of space or the nature of the refuse. *Id.*

*Id.* at *5.

Here, Mr. Wagner states that he worked at a trash company and a used car dealership two days a week but does not say what exactly he did or for how many weeks. He also claims to have scrubbed floors at the Ball Aerospace headquarters once a week. Again, he does not say for how many weeks. It is also not apparent that such work was essential to Ball Aerospace's business. He claims that he performed a construction clean at an Amazon warehouse, but this appears to be a one-off job. He also worked at the Laramie airport on one occasion, and at "3 or 4 hotels [in] Estes Park where we worked on the floors and carpet." (Dkt. #35-1 at 2.) Like the plaintiff in *Steimel*, Mr. Wagner has generally not sufficiently described the activities he performed at these locations, nor has he established that his cleaning services were essential to any of these businesses. Mr. Wagner did not work full-time at any one of these locations nor did his work at any of these locations constitute most of his employment responsibilities. Indeed, his declaration suggests that Mr. Wagner spent most of his time cleaning local Colorado businesses and entities. Occasional work at interstate businesses is not sufficient to demonstrate the requisite proximity to commerce.

Because Mr. Wagner has failed to demonstrate a genuine issue of material fact that he was engaged in commerce or engaged in the production of goods for commerce for the purposes of the FLSA, Mr. Wagner is not entitled to individual coverage.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants have established that Mr. Wagner cannot claim FLSA protection on an enterprise or individual basis. Accordingly, his own Motion for Summary Judgment (Dkt. #42) must be denied.

## STATE LAW CLAIMS

28 U.S.C. § 1367 permits a federal court to exercise supplemental jurisdiction over claims within the same constitutional case or controversy as a claim over which the court has original jurisdiction. 28 U.S.C. § 1367 (1990). A court may decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). Mr. Wagner's remaining causes of action either arise out of Colorado statutes or are grounded in Colorado common law; no federal laws are implicated by these claims. There is not a compelling reason to maintain jurisdiction over the state claims, and therefore, they are dismissed without prejudice.

## CONCLUSION

It is hereby **ORDERED** that Defendants' Second Motion for Summary Judgement (Dkt. #31) is **GRANTED**. Mr. Wagner has failed to meet the burden of creating a genuine dispute of material fact regarding his entitlement to protection under the FLSA

on either an enterprise or individual basis. Therefore, Defendants are entitled to judgment as a matter of law. Judgement shall enter in favor of Defendants and against Mr. Wagner. Accordingly, it is further **ORDERED** that Mr. Wagner's Motion for Summary Judgment (Dkt. #42) is **DENIED**.

    **BY THE COURT**

Date:  October 30, 2023
       Denver, Colorado

*N. Reid Neureiter*
N. Reid Neureiter
United States Magistrate Judge

15